EXHIBIT 1

Anthony W. Merrill (#022598)
Lucas J. Narducci (#011281)
Creighton P. Dixon (#033298)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
E-Mail: amerrill@swlaw.com
    lnarducci@swlaw.com
    cdixon@swlaw.com
Attorneys for Plaintiff Dolphin, Incorporated

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| DOLPHIN, INCORPORATED, an Arizona corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| FORTITUDE RE, a Bermuda corporation, f/k/a AIG SPECIALTY INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Dolphin, Incorporated ("Dolphin") alleges for its claims for breach of contract, declaratory judgment, and breach of the duty of good faith and fair dealing against Defendant Fortitude Re, as follows:

**PARTIES, JURISDICTION, VENUE, AND DISCOVERY TIER**

1. Dolphin is a corporation organized under the laws of the State of Arizona with its principal place of business in Phoenix, Arizona.

2. This lawsuit arises out of an insurance contract negotiated, entered into, and issued in Arizona. Thus, this Court has jurisdiction pursuant to Ariz. Rev. Stat. § 12-123.

3. The insurance policy at issue here, which is described in more detail below, was issued by American International Specialty Lines Insurance Company, which upon information and belief, later changed its name to AIG Specialty Insurance Company.

4849-2753-2687

4. Upon information and belief, AIG Specialty Insurance Company has transferred all assets, liabilities, and obligations related to the insurance policy at issue here to Defendant Fortitude Re.

5. Upon information and belief, Fortitude Re is a corporation organized under the laws of the Bermuda with its principal place of business in Bermuda.

6. Venue is proper in this Court pursuant to Ariz. Rev. Stat. § 12-401 because Fortitude Re resides outside the state, Dolphin's principal place of business is in Maricopa County, and the actions giving rise to Dolphin's claims occurred in Maricopa County.

7. The Court has personal jurisdiction over Fortitude Re because it purposely availed itself of the benefits of the laws of Arizona.

8. Pursuant to Ariz. R. Civ. P. 26.2(c)(3)(C), Tier 3 discovery is proper in this case due to its complex nature and because Dolphin's claims exceed $300,000 in value.

## GENERAL ALLEGATIONS

9. Dolphin incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

10. This is an action for (1) breach of contract; (2) declaratory judgment regarding an insurance policy; and, (3) breach of the duty of good faith and fair dealing.

**The Policy**

11. Dolphin's parent company, Karsten Manufacturing Corporation, purchased Pollution Legal Liability Select Policy No. 1959087 (the "Policy," attached hereto as Exhibit A).

12. The period of the Policy, as modified by Endorsement No. 23, is from December 20, 2002 to January 31, 2013.

13. The Policy's Named Insureds include Karsten Manufacturing Corporation and any corporation that Karsten Manufacturing Corporation has more than 50% ownership interest in, which includes Dolphin.

14. The Policy's "Insured Property" includes the Dolphin plant located at 740 S. 59th Ave., Phoenix, AZ 85043 (the "Dolphin Property").

4849-2753-2687

- 2 -

15. The Policy's limits of liability for Coverage A through I are $30,000,000 per incident and in the aggregate, with a $250,000 deductible.

16. Dolphin has satisfied the deductible for the Claim, as that term is further defined herein.

17. Under Coverage D, Defendant is contractually obligated to pay:

> Loss that [Dolphin] becomes legally obligated to pay as a result of Claims for Clean-Up Costs resulting from Pollution Conditions, beyond the boundaries of the Insured Property, that commenced prior to the Continuity Date, and migrated from the Insured Property, provided such Claims are first made against the Insured and reported to the Company in writing during the Policy Period[.]

18. Under Coverage E, Defendant is contractually obligated to pay:

> Loss that [Dolphin] becomes legally obligated to pay as a result of Claims for Clean-Up Costs resulting from Pollution Conditions, beyond the boundaries of the Insured Property, that commenced on or after the Continuity Date, and migrated from the Insured Property, provided such Claims are first made against the Insured and reported to the Company in writing during the Policy Period[.]

19. Under Coverage F, Defendant is contractually obligated to pay:

> Loss that [Dolphin] becomes legally obligated to pay as a result of Claims for . . . Property Damage resulting from Pollution Conditions, beyond the boundaries of the Insured Property, that migrated from the Insured Property, provided such Claims are first made against the Insured and reported to the Company in writing during the Policy Period[.]

20. The Policy defines "Loss" as:

> (1) Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damages; and civil fines, penalties, or assessments for Bodily Injury or Property Damages; (2) Costs, charges and expenses incurred in the defense, investigation or adjustment of Claims for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments, or for Clean-Up Costs; or (3) Clean-Up Costs.

21. The Policy defines a "Claim" as "a written demand received by the Insured seeking a remedy or alleging liability or responsibility on the part of the Insured for Loss" under the Policy.

22. The Policy defines "Property Damage" as:

4849-2753-2687

- 3 -

> 1. . . .[P]hysical injury to or destruction of tangible property of parties other than the Insured, including the resulting loss of use and diminution in value thereof; 2. Loss of use . . . of tangible property of parties other than the Insured that has not been physically injured or destroyed; . . . 4. Natural Resource Damage.

23. The Policy defines "Pollution Conditions" as:

> "[T]he discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, . . . waste materials into or upon . . . any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered."

24. The Policy mandates that Defendant has "the right and duty to defend any Claims covered under [the Policy]."

25. Further, Defendant's "duty to defend or continue defending any such Claim, and to pay any Loss, shall cease once the applicable limit of liability . . . has been exhausted."

### The Claim

26. In December 2008, Gallagher & Kennedy ("G&K"), began communications, on behalf of Roosevelt Irrigation District ("RID"), with the Arizona Department of Environmental Quality ("ADEQ") and Environmental Protection Agency ("EPA") regarding alleged contamination, and threatened contamination, of its groundwater wells in the West Van Buren Area ("WVBA").

27. G&K, on behalf of RID, designed an Early Response Action ("ERA") aimed at addressing the claims of groundwater contamination.

28. G&K, on behalf of RID, submitted its proposed ERA to ADEQ for review and approval on October 5, 2009.

29. ADEQ and several Potentially Responsible Parties ("PRPs") provided comments on the ERA.

30. G&K, on behalf of RID, submitted a revised ERA to ADEQ on February 4, 2010, which was the subject of public review and comment.

31. On June 24, 2010, ADEQ conditionally approved the ERA.

32. On August 19, 2009, G&K sent a letter to Dolphin identifying it as a "potentially responsible party for groundwater contamination that has impacted wells owned and operated by" RID based on alleged releases from the Dolphin Property.

33. The August 19, 2009 letter enclosed a draft complaint with nearly the identical factual allegations and legal arguments later alleged in both the RID Action and the G&K Action, which are further described below.

34. That letter constituted a "Claim" pursuant to the terms of the Policy.

35. The Claim asserted that the alleged contamination of RID's wells emanated from "facilities" located in three (3) distinct regional sites that either state or federal agencies have identified under CERCLA or the ADEQ WQARF program including the WVBA (the Dolphin Property is located in the WVBA WQARF Site).

36. The August 19, 2009 letter alleged liability and responsibly on the part of Dolphin for environmental property damage and sought a remedy from Dolphin in the form of recovery of past and future costs associated with that contamination.

37. Dolphin tendered the Claim to Defendant for defense and indemnity on October 7, 2009.

38. Defendant acknowledged receipt of the Claim on October 20, 2009 and again on January 19, 2010.

39. On May 21, 2010, Defendant agreed to defend Dolphin from the Claim, subject to a reservation of rights.

40. Defendant recognized that the Claim concerned "over 20 wells" "owned and operated by" RID "contaminated with pollutants including but not limited to TCE, TCA, MTBE, and PCE."

41. Defendant further recognized that the Claim alleged that these pollutants "migrated from Dolphin's manufacturing site . . . onto the West Van Buren WQARF Site."

## The RID Action

42. In mid-2010, the Claim continued as a lawsuit styled *Roosevelt Irrigation District v. Salt River Project Agricultural Improvement & Power District, et al.*, Case No. 2:10-cv-00290-DAE-BGM (the "RID Action"), filed by G&K, as lawyers for RID.

43. On June 30, 2010, G&K served the First Amended Complaint ("FAC") in the RID Action on Dolphin.

44. The RID Action continued the Claim as it sought recovery of the same past and future costs arising from the very same alleged contamination emanating from the Dolphin Property and supposedly impacting the very same groundwater wells described in the initial letter from G&K commencing the Claim.

45. The FAC alleged that hazardous substances had been released into the soils and groundwater at the Dolphin Property.

46. Mirroring the terms of the letter that commenced the Claim, the FAC asserted that "over 20 of RID's groundwater wells have been impacted by hazardous substances, including" TCE, TCA, DCE, and MTBE. An additional 11 wells in the WVBA were also threatened.

47. The FAC further alleged that RID had incurred costs, and would incur costs in the future, to address the impact or threatened impact of hazardous substances released at or from the Dolphin Property on RID's groundwater wells, public health, and the environment.

48. Dolphin, with Defendant's approval, and in conjunction with a Joint Defense Group ("JDG"), engaged in a coordinated defense strategy aimed at responding to the RID Action and engaging ADEQ on a potential alternative remedy to address the groundwater concerns (and ultimate damages) driving the Claim.

49. This process remains ongoing, with recent overtures to the EPA from ADEQ.

50. As part of its initial defense in the RID Action, and with approval from Defendant, Dolphin joined a motion to disqualify G&K from further participation in the RID Action.

4849-2753-2687

- 6 -

51. In October 2011, the Court issued an order disqualifying G&K from representing RID against Dolphin and five other defendants (the "DQ Defendants"), (the "DQ Order").

52. As a result, RID filed a notice of substitution of counsel, and added a new firm, Bonnet, Fairbourn, Friedman & Balint ("BF") to pursue the RID Action against the DQ Defendants.

53. G&K and BF jointly filed a Motion for Leave to File a proposed Second Amended Complaint, with G&K acting as RID's counsel for all but the DQ Defendants.

54. At the December 16, 2011 status conference, Dolphin sought to bar G&K from participating in the Claim at any level.

55. On August 31, 2012, RID voluntarily dismissed the DQ Defendants from the RID Action, including Dolphin.

56. At this point, although Dolphin was not a party to the RID Action, Defendant recognized that the Claim remained pending continued to honor its duty to defend Dolphin.

57. Defendant did not withdraw or terminate its defense of Dolphin at this time, even though Dolphin was no longer party to the RID Action.

58. On September 10, 2012, twenty-four defendants from the RID Action sent a letter to Dolphin stating that it would be a "waste of the parties' and Court's resources to proceed with liability determinations or an allocation with so many alleged significant PRPs absent."

59. Those parties, including the current parties to the G&K Action, indicated their intention to pursue third-party claims against Dolphin for the damages and liability alleged in the Claim if it was not fully and completely dismissed.

60. The September 10, 2012 letter (a Claim by itself) reaffirmed the continuing nature of the original Claim by referencing Dolphin as one "of the leading PRPs" at the WVBA located closest to RID's wells.

61. Thus, even though Dolphin was temporarily not involved in the RID Action, the Claim remained for the very same liability originally tendered to Defendant in 2009.

4849-2753-2687

- 7 -

62. At that time, Defendant continued to provide Dolphin with a defense.

63. On September 13, 2012, out of an abundance of caution and prior to the expiration of the Policy, Dolphin submitted to Defendant a Supplemental Notice of Loss indicating that RID's voluntary dismissal did not terminate the Claim as to Dolphin and providing Defendant with timely notice of the September 10, 2012 letter.

64. The Claim remained pending against Dolphin even though the DQ Order resulted in a temporary dismissal of Dolphin from the RID Action.

65. Dolphin explained to Defendant that, regardless of the voluntary dismissal from the RID Action, Dolphin "continue[d] to incur legal and others costs to protect itself from potential liability from the claim or environmental property damage."

66. Defendant, recognizing that the Claim remained pending, did not withdraw its defense of the Claim at that time.

67. On October 29, 2012, several defendants in the RID Action filed a Third-Party Complaint naming Dolphin.

68. Defendant continued to provide Dolphin with a defense.

69. On November 22, 2016, the RID Action court granted a motion for partial summary judgment with respect to $15,029,878.09 of RID's alleged past costs (there remained $1,262,438.84 in RID's alleged past costs at issue in the RID Action).

70. The Court held that RID could not recover the approximately $15 million in alleged past costs relating to the Claim because RID did not directly incur those costs. Rather, that portion of the Claim needed to be pursued by the entities that did incur those costs; namely, G&K, and RID's consultants Spinnaker Holdings LLC ("Spinnaker") and Synergy Environmental LLC ("Synergy").

71. Those costs, which were part of the liability sought from the beginning in the original written demand that commenced the Claim, and initially part of the RID Action, continue to be sought in the G&K Action.

72. Due to the November 2016 Order the Claim split into three litigations; namely, (1) the RID Action; (2) the lawsuit styled *Gallagher & Kennedy, PA v. City of*

4849-2753-2687

- 8 -

1  *Phoenix, et al.*, Case No. 2:16-cv-04447-DAE-BGM (the "G&K Action"); and (3) the lawsuit styled *Spinnaker Holdings LLC, et al. v. City of Phoenix, et al.*, Case No. 2:16-cv-04448-DAE-BGM.

73. The lawsuit filed by consultants Spinnaker and Synergy was later voluntarily dismissed and subsumed into the G&K Action.

74. Subsequently, with Defendant's assistance, Dolphin settled the small portion of the Claim remaining at issue in the RID Action.

75. That settlement did not exhaust the limits of the Policy.

76. That settlement did not fully and completely release Dolphin from the liability sought in the Claim.

77. Indeed, the settlement with RID specifically excluded any current or future claims or defenses (affirmative or otherwise) by or against G&K, including claims and defenses (affirmative or otherwise) asserted in the G&K Action.

78. Thus, despite splintering into different lawsuits, the Claim continued and the vehicle for seeking recovery of the damages (including future costs) merely transitioned to the G&K Action.

### The G&K Action

79. The G&K Action arises from the very same allegations of liability for the very same contamination of hazardous substances impacting the very same wells as the original Claim and the RID Action.

80. As it merely continues the Claim first tendered to Defendant during the period of the Policy, the G&K Action contains allegations regarding groundwater contamination from facilities located in three (3) distinct regional sites that either state or federal agencies have identified under CERCLA or the ADEQ WQARF program including the WVBA, the ERA and RID's groundwater wells.

81. The G&K Action continues to seek damages for the liability alleged in the Claim since 2009 and concerns costs excluded from the RID Action by that court's November 22, 2016 Order.

4849-2753-2687

- 9 -

82. The Complaint in the G&K Action specifically states that "pursuant to this initial claim, G&K, on behalf of RID" incurred response costs and seeks recovery.

83. G&K's prefatory footnote to its Complaint expressly acknowledges that it is an extension and continuation of the original Claim.

84. The RID Action court's November 22, 2016 Order did not create a "new" claim, but rather caused the original Claim to be pursued in a different lawsuit.

85. Due to the DQ Order, Dolphin is not currently named in the G&K Action, though it continues defense work regarding the remedy and damages driving the Claim.

86. Parties to the September 10, 2012 letter have indicated that they will pursue Dolphin for the same as the liability initially at issue in the original Claim letter in the G&K Action once third-party practice begins.

87. On January 15, 2019, counsel for Prudential Overall Supply wrote that it intended to name Dolphin as a third-party defendant in the G&K Action based on the same facts and assertions of liability set forth in the September 10, 2012 letter. *See* Exhibit B, a copy of the January 15, 2019 letter.

88. Upon information and belief, at least one of the parties to the September 10, 2012 letter will pursue Dolphin for the same as the liability initially at issue in the original Claim letter via third-party practice in the G&K Action.

### The Coverage Denial

89. The Policy obligates Defendant to defend and cover "Claims," a broad concept that is separate and distinct from that of a lawsuit.

90. Here, the Claim originated from a letter sent by G&K on August 19, 2009 alleging that Dolphin contributed to groundwater contamination in the WVBA.

91. The Claim asserted that Dolphin was liable for loss resulting from environmental contamination of groundwater impacting wells owned and operated by RID.

92. The Claim asserted that over 20 wells owned and operated by RID had been contaminated with pollutants, including TCE, PCE, TCA, MTBE, and other volatile organic compounds.

4849-2753-2687

- 10 -

93. The Claim alleged that these pollutants migrated from the Dolphin Property into the WVBA.

94. The G&K Action is the current iteration of that Claim.

95. The G&K Action arises from the very same allegations of contamination in the WVBA and seeks the recovery of the same loss asserted in the initial letter.

96. Dolphin continues to face a risk of liability arising from the very same damages from the very same contamination of hazardous substances impacting the very same wells as described in the Claim first tendered to Defendant in 2009.

97. Even if there is an argument that the original Claim is no longer covered by the Policy, the September 10, 2012 letter also represents a Claim that is still active.

98. Defendant was provided timely notice of the September 10, 2012 letter during the Policy period.

99. Defendant has yet to exhaust its applicable limits under the Policy.

100. Defendant has yet to obtain a full and complete release on behalf of its policyholder Dolphin.

101. Since a Claim remains, refusal to defend the Claim would violate the duties Defendant owes to its policyholder.

102. Defendant must give "equal consideration to the protection of the insured's as well as its own interests." *See Acosta v. Phoenix Indem. Ins. Co.*, 214 Ariz. 380, 383, 153 P.3d 401, 404 (App. 2007) (citations omitted).

103. Defendant owes Dolphin a duty of good faith and cannot take any action to impair Dolphin's right to receive the "benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (Ariz. 1986) (citations omitted).

104. Defendant cannot "force [Dolphin] to go through needless adversarial hoops to achieve its rights under the policy." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 238, 995 P.2d 276, 280 (Ariz. 2000).

105. Defendant is now wrongfully denying Dolphin a defense.

106. Defendant's position is contrary to its conduct over the nearly full decade since Dolphin tendered the Claim to Defendant.

## COUNT I

### (Breach of Contract)

107. Dolphin incorporates by reference each of the allegations contained in the preceding paragraphs as though fully set forth herein.

108. Dolphin and Defendant are parties to the Policy, an express contract.

109. Defendant's conduct in denying a defense to Dolphin, as described above constitutes a material breach of the Policy.

110. As a direct and proximate result of these breaches, Dolphin has suffered damages in an amount to be proven at trial.

## COUNT II

### (Declaratory Judgment)

111. Dolphin incorporates by reference each of the allegations contained in the preceding paragraphs as though fully set forth herein.

112. As set forth above, under the Policy, Defendant has a clear duty to defend the Claim.

113. Defendant has withdrawn its defense, asserted that it does not owe any duty to defend Dolphin, and refuses to defend Dolphin against the ongoing Claim.

114. The actual controversy between the Parties warranting declaratory judgment includes, but is not limited to, Defendant's duty to defend Dolphin against the Claim.

115. This controversy between Dolphin and Defendant relates to the Policy and is present, substantial, and justiciable, and sufficiently invokes this Court's powers pursuant to Ariz. Rev. Stat. § 12-1831 *et seq.* to declare the Parties' rights and liabilities.

## COUNT III

### (Breach of the Duty of Good Faith and Fair Dealing)

116. Dolphin incorporates by reference each of the allegations contained in the preceding paragraphs as though fully set forth herein.

4849-2753-2687

- 12 -

117. Defendant owes Dolphin a duty of good faith and fair dealing with respect to its treatment of Dolphin under the Policy.

118. Defendant's unjustified and unreasonable refusal to defend Dolphin in the G&K Action is directly contradicted by the Policy's clear terms.

119. Defendant's conduct, as described above, constitutes a breach of its duty of good faith and fair dealing, and has impaired the security purchased under the Policy. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986); *Voland v. Farmers Ins. Co. of Ariz.*, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App. 1997).

120. Defendant's conduct as described herein was without reasonable basis given the Policy's clear terms.

## PRAYER FOR RELIEF

Wherefore, Dolphin prays for judgment against Defendant Fortitude Re as follows:

A. Compensatory, consequential, and incidental damages in an amount to be proven at trial;

B. An award of reasonable attorneys' fees and costs and disbursements for this action, as provided under the Policy, Ariz. Rev. Stat. §§ 12-341.01 and 12-341, the common law, and other applicable law;

C. Prejudgment interest at the highest rates permitted by law and from the earliest date until paid in full;

D. Post-judgment interest at the legal rate for all sums awarded herein;

E. A judicial declaration that Defendant Fortitude Re has a continuing duty to defend Dolphin against the Claim; and,

F. Such other relief as the Court deems just and proper.

DATED this 15th day of August, 2019.

SNELL & WILMER L.L.P.

By: /s/ Anthony W. Merrill
Anthony W. Merrill
Lucas J. Narducci
Creighton P. Dixon
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Attorneys for Plaintiff Dolphin, Incorporated

EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA – PHOENIX DIVISION

| | |
|---|---|
| Dolphin, Incorporated, an Arizona corporation<br><br>*Plaintiff*,<br><br>v.<br><br>Fortitude Reinsurance Company Ltd., a Bermuda corporation<br><br>*Defendant.* | Case No.<br><br>**DECLARATION OF ALLISON PEDRO IN SUPPORT OF FORTITUDE REINSURANCE COMPANY LTD.'S NOTICE OF REMOVAL** |

I, Allison Pedro, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the Director of Financial Reporting and Principal Representative of Fortitude Reinsurance Company Ltd., a Bermuda corporation ("Fortitude Re").

2. I am more than 21 years of age, and I make this Declaration based upon my own personal knowledge obtained through my role at Fortitude Re.

3. Fortitude Re is a corporation incorporated under the laws of Bermuda.

4. Fortitude Re maintains its principal place of business in Bermuda.

Executed on September  12 , 2019.

                                                             _A. L. Pedro_
                                                             Allison Pedro

EXHIBIT 3

**MATT ANDERSON LAW, PLLC**
4602 East Thomas Road
Phoenix, Arizona 85018
602.732.6590
Matt Anderson (025934)
matt@mattandersonlaw.com

*Attorneys for Defendant Fortitude Reinsurance Company Ltd.*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Dolphin, Incorporated, an Arizona corporation<br><br>*Plaintiff*,<br><br>v.<br><br>Fortitude Reinsurance Company Ltd., a Bermuda corporation,<br><br>*Defendant*. | Case No.: CV 2019-011784<br><br>**NOTICE OF FILING NOTICE OF REMOVAL TO FEDERAL COURT** |

Please take notice that defendant Fortitude Reinsurance Company Ltd. is filing a Notice of Removal pursuant to 28 U.S.C. sections 1332 , 1441, and 1446 to remove this case to the Phoenix Division of the District of Arizona contemporaneous with this notice. A copy of the Notice of Removal (exclusive of exhibits) is attached hereto as **Exhibit 1**.

DATED this 13th day of September, 2019.

            **MATT ANDERSON LAW, PLLC**

            /s/ *Matt Anderson*
            Matt Anderson
            *Attorneys for Defendant Fortitude Reinsurance Company Ltd.*

1  ORIGINAL e-filed this same date
   via TurboCourt with copies
2  automatically routed to:

3  Anthony W. Merrill
   Lucas J. Narducci
4  Creighton P. Dixon
   SNELL & WILMER L.L.P.
5  One Arizona Center
   400 E. Van Buren, Suite 1900
6  Phoenix, Arizona 85004
   amerrill@swlaw.com
7  lnarducci@swlaw.com
   cdixon@swlaw.com
8  *Attorneys for Plaintiff*

9  By: /s/ *Carrie Bishop*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26