Anthony W. Merrill (#022598)
Lucas J. Narducci (#011281)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
E-Mail: amerrill@swlaw.com
          lnarducci@swlaw.com
          cdixon@swlaw.com
*Attorneys for Plaintiff Dolphin, Incorporated*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dolphin, Incorporated, an Arizona corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>AIG Specialty Insurance Company, an Illinois company,<br><br>                    Defendant. | Case No. 2:19-cv-05161-DJH<br><br>**DOLPHIN, INCORPORATED'S MOTION TO STRIKE PORTIONS OF DEFENDANT AIG'S EXPERT REPORT**<br><br>**(Oral Argument Requested)** |

Instructing the jury as to the applicable law "is the distinct and exclusive province" of the Court. *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993). Expert testimony is only admissible when it will assist the trier of fact in understanding the evidence or determining a disputed issue of fact. *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988) (overruled on other grounds). However, "resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id*. at 497. Testimony "which articulates and applies the relevant law ... circumvents the [fact finder's] decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

Here, AIG Specialty Insurance Company ("AIG") improperly seeks to circumvent the role of this Court by using the testimony of its expert witness, Steven Plitt, to instruct the jury as to applicable law. The Court should not allow Mr. Plitt to act as a legal advocate under the guise of an expert witness. Rather than merely opine on the industry standards for

insurance claims handling, Mr. Plitt's 63-page report primarily echoes the legal opinions and arguments asserted by AIG. These portions of Mr. Plitt's expert report serve no other function than to usurp the roles of this Court and the factfinder. For example, Mr. Plitt:

(1) Provides legal analysis of claims-made coverage including citations to twelve court cases [Plitt Report at 9–13, "Exhibit 1"],

(2) Applies law to fact in his discussion of extracontractual liability [*Id.* at 50–52],

(3) Opines on the exact state of mind of AIG adjusters, whom he never interviewed. [*Id.* at 29–31],

(4) Provides analysis of the unambiguous insurance policy despite his admission that he was not hired as a coverage expert in this matter [*Id.* at 26–27], and

(5) Fails to provide the facts or data that he relied upon in forming his opinions but rather copies and pastes verbatim pages of AIG's Motion for Summary Judgment, dated April 6, 2020, AIG's denial communications, dated May 10, 2018, the Seventh Agreed-To Litigation Plan, dated November 14, 2013, and the Court's Order, dated, February 5, 2021, [*Id.* at 13–16, 20–25, & 37–50], yet curiously fails to do the same for Dolphin's Second Amended Complaint [*Id.* at 16–20], which he selectively edits.[1]

Mr. Plitt even admits that his introductory and claims-made coverage discussions should not qualify as "opinions" at all. [Plitt Deposition 14:5–21; 70:4–9, attached as "Exhibit 2".] Rather, the Court should consider them as "observations." [*Id.*] If these sections of his report are not opinions, then they serve no helpful purpose for any fact finder. If they are opinions, then they are improper legal analysis. Thus, Plaintiff Dolphin, Incorporated ("Dolphin") requests the Court strike each of these pages and prohibit Mr. Plitt from presenting that information at trial.

---

[1] According to Mr. Plitt in his deposition testimony, he did not attempt to provide the facts or data that he relied upon in a summary or narrative form because: "All of you guys know the facts. So all I need to do is put forth that section that lets a reader, who isn't you guys, could read the report and come up with a basic core fundamental understanding of what happened." [Plitt Dep. 48:19–22, attached as "Exhibit 2".]

## I. BACKGROUND

### A. Summary of Mr. Plitt's Report and Opinions

Mr. Plitt produced a 63-page single-space expert witness report that was separated into nine parts: (1) "Qualifications" (pages 1–4), (2) "Documents Provided for Review" (pages 4–6), (3) "Prior Testimony" (page 6), (4) "Insurance Industry Standards" (pages 7–9), (5) "Overview of Claims-Made Coverage" (pages 9–13), (6) "Overview of Claims Litigation" (pages 13–25), (7) a section on the insurance policy (pages 26–27), (8) "Summary of Opinions" (pages 27–52), and (9) "Rebuttal Opinions" (pages 53–62).

In his deposition testimony, Mr. Plitt admits that his "opinions" do not begin until page 27 of his report. [Ex. 2 at 14:5–21; 70:4–9.] In those opinions, Mr. Plitt offers testimony regarding the standard of care for AIG's investigation, denial, and communication actions [Ex. 1 at 28–50], whether the Prudential and Maricopa County third-party complaints could constitute policy-defined "Related Claim(s)" or "Possible Claim(s)" as a matter of fact and law [*Id.* at 50–52], whether the policy's implied covenant of good faith and fair dealing was violated [*Id.* at 52], and finally whether it was reasonable for AIG to conclude that the Prudential and Maricopa County third-party actions were separate and distinct claims from the RID claim that needed to be separately and specifically reported as required by the Policy [*Id.*].

## II. STANDARD OF REVIEW

The Court must act as a gatekeeper to exclude testimony that does not meet Federal Rule of Evidence 702's reliability" and relevance standards by making a preliminary determination that the expert's testimony is reliable and relevant. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)); *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1197 (9th Cir. 2007). In other words, the Court must "protect juries from being inappropriately swayed by problematic testimony." *B.K. by next friend Tinsely v. Faust*, No. CV-15-00185-PHX-ROS, 2020 WL 2616033, at *3 (D. Ariz. May 22, 2020); *see also Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017) (stating the Court's role when faced with a *Daubert*

motion is to "prevent[ ] shoddy expert testimony … from reaching the jury"). Expert testimony is subject to exclusion if it falls short of either standard. *Stilwell*, 482 F.3d at 1192. The proponent of an expert's testimony bears the burden of establishing that the testimony is admissible and helpful. *See Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *Maffei v. N. Ins. Co. of N.Y.*, 12 F.3d 892, 897 (9th Cir. 1993). If an expert's testimony is not admissible <u>and</u> helpful, then it must be stricken. *Id.*

"[A]n expert witness cannot give an opinion as to her <u>legal conclusion</u>, *i.e.*, an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original) (*quoting Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), o*verruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014)). Expert testimony is admissible when it will assist the trier of fact in understanding the evidence or determining a disputed issue of fact. *Brodie*, 858 F.2d at 496. However, "resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.* at 497. Testimony "which articulates and applies the relevant law ... circumvents the [fact finder's] decision-making function by telling it how to decide the case." *Specht*, 853 F.2d at 808.

The principle that legal opinion evidence concerning the law is inadmissible is " 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.' " *In re Initial Public Offering Sec. Litigation*, 174 F.Supp.2d 61, 64 (S.D. N.Y. 2001) (quoting Thomas E. Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 *1043 U. Kan. Law Rev. 325, 352 (1992)). The rule regarding legal testimony has been stated as follows:

> A witness cannot be allowed to give an opinion on a question of law .... In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge .... To allow anyone other than the judge to state the law would violate the basic concept.

*Specht*, 853 F.2d at 807 (citation omitted). Courts have held that expert testimony by lawyers, law professors, and others concerning legal issues is improper. *See In re Initial Public Offering Sec. Litigation*, 174 F.Supp.2d at 64 (stating that "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law."); *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) (reversing trial court's decision to allow bankruptcy judge to testify regarding his interpretation of the Bankruptcy Act, stating that "[i]t is the function of the trial judge to determine the law of the case."); *Wollan v. U.S. Dept. of Int. Bureau of Land Management*, 997 F. Supp. 1397, 1403 (D. Colo. 1998) (finding reliance on expert report improper stating that an expert's "legal opinion as to what the homestead laws say or do not say ... in inapposite.... Where the ultimate issue is a question of law, the opinion of a legal expert, even a lawyer, interferes with the judge's role as 'sole arbiter of the law' and should not be allowed.").

In addition to prohibiting legal expert testimony that attempts to define the governing law, courts also prohibit legal expert opinion which applies the law to the facts. The judge is the sole arbiter of the law and its application to the facts. *See Marx & Co. v. Diners' Club*, Inc., 550 F.2d 505, 508–11 (2d Cir.1977) (holding that the trial court erred in permitting a lawyer to offer his opinions concerning securities law and the application of that law to the contract in dispute.); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.1995) (finding that the trial court erred in allowing testimony that police officers' conduct satisfied Fourth Amendment requirements stating that "[the expert's] testimony was not a fact-based opinion, but a statement of legal conclusion. These legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony."); *Montgomery v. Aetna Cas. and Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (finding that court abused its discretion by allowing witness to testify that defendant had a duty to hire tax counsel, stating "[a] witness also may not testify to the legal implications of conduct ...."); *Weitzenhoff*, 35 F.3d at 1287 (expert testimony explaining the legal effect of an environmental permit was improper because the judge consigned the interpretation of the law to the jury which was "an impermissible delegation of the district judge's duties ....").

## III.   ARGUMENT

### A.   Mr. Plitt's Improper Legal Conclusions Should Be Stricken.

An expert witness may express an opinion with respect to an ultimate issue to be decided by the trier of fact under Federal Rule of Evidence 704(a), but the expert may not "give an opinion as to [his] legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *See United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007); *Nationwide Transp. Fin. v. Cass Info. Sys. Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citing Fed. R. Evid. 704(a)). Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id*. That means an expert may not apply the law to the facts of the case to form legal conclusions. *See Pinal Creek Grp. V. Newmont Mining Corp.*, 352 F. Supp.2d 1037, 1042 (D. Ariz. 2005); *see also Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 2020 F.Supp.2d 1212, 1217 (D. Kan. 2002) (citing *A.E. by and through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)). Federal courts also "typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court how the law should apply to the facts of a particular case." *Pinal Creek Grp.*, 352 F. Supp.2d at 1042.

Here, Mr. Plitt provides numerous inappropriate legal conclusions as part of his expert report. First, on pages 9 to 13, Mr. Plitt sets forth the alleged legal standards that should apply to insurance coverage and bad faith claims. In particular, he cites to numerous case law and secondary sources setting forth his legal argument and what constitutes claims-made and occurrence policies [Ex. 1 at 9–13].[2] In his deposition testimony, Mr. Plitt

---

[2] Mr. Plitt cites to: (1) *Craft v. Philadelphia Indem. Ins. Co.*, 343 P.3d 951, *opinion affirmed certified question answered*, 599 F. App'x 846 (10th Cir. 2015), (2) *Thoracic Cardiovascular Associates, Ltd. v. St. Paul Fire and Marine Ins. Co.*, 891 P.2d 916 (Ariz. App. 1994), (3) *Physicians Ins. Co. of Wisconsin*, 273 P.3d 174 (2012), (4) *Sletten v. St. Paul Fire & Marine Ins. Co.*, 780 P.2d 428 (Ariz. App. 1989), (5) *Stein v. Continental Casualty Co.*, 349 N.W.2d 127 (1984), (6) *Simpson & Creasy, P.C. v. Continental Cas. Co.*, 770 F.Supp.2d 1351 (S.D. Ga. 2011), (7) *Appleman on Insurance Law and Practice* § 4.04 (2010), (8) *American Cas. Co. v. Continisio*, 17 F.3d 62 (3d Cir. 1994), (9) *Insurance Claims and Disputes* § 11:5 (6th ed. 2013), (10) *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512 (Fla. 1983), (11) *Zuckerman v. Nat'l Union & Fire Ins. Co.*, 495 A.2d 395 (1985), and (12) *Stine v. Continental Casualty Co.*, 349 N.W.2d 127 (1984).

1  downplays these pages as being nothing more than "curated observations," which in his
2  mind do not rise to actual "opinions." [Ex. 2 at 14:5–21.] According to Mr. Plitt, his actual
3  "opinions" do not start until page 27. [Ex. 2 at 14:16–21.] If we are to take Mr. Plitt's
4  deposition words at face value, then all "curated observations" that involve legal discussion
5  and standard setting prior to page 27 should be stricken as improper. The Court should not
6  condone this backdoor attempt to instruct the jury as to legal conclusions, which is the
7  distinct province of the Court.

8        Second, on pages 50 to 52, Mr. Plitt sets forth the standard of the "fair debatability"
9  defense as it applies to extracontractual liability. Mr. Plitt sets forth the two-prong test under
10 Arizona law and then applies law to facts, citing *Truss Joist Corp. v. Safeco Ins. Co.*, 735
11 P.2d 125 (Ariz. App. 1986), to purportedly demonstrate that AIG's investigation was
12 reasonable and therefore appropriate. [Ex. 1 at 50–52.] The holdings of *Pinal Creek*,
13 *Employers Reinsurance Corp.*, and *A.E. by and through Evans* are clear: experts may not
14 apply the law to facts of the case to form legal conclusions.[3] Thus, the improper testimony
15 found in these pages must be stricken too.

16       Third, on page 27, Mr. Plitt sets forth the so-called standard for assessing an
17 insurance company's conduct. [Ex. 1 at 27.] According to Mr. Plitt, "questions can arise
18 regarding the insurance company's interpretation and belief regarding whether the
19 insurance company's interpretation of the governing law was reasonable under the
20 circumstances." [*Id.*] Mr. Plitt then states what he believes to be the appropriate standard in
21 such instances: "In that context, the question is not what the law is that governs a particular
22 case, but what the insurance company interpreted the law to be and how that interpretation
23 informed the insurance company's decision and conduct regarding the claim." [*Id.*] Mr. Plitt

---

[3] Potentially anticipating that Dolphin may find his application of the extracontractual liability two-prong analysis to be impermissible, Mr. Plitt states: "As an expert it is not my role to opine on the ultimate conclusion on those issues and, therefore, I do not state as an opinion herein my own conclusion regarding the issues which would be favorable and consistent with the position asserted by [AIG] in the current litigation. For purposes of expert analysis, I can only go so far as to conclude that the issues were fairly debatable, both factually and legally." [Ex. 1 at 51.] While Mr. Plitt states he is not rendering a legal conclusion, he is in fact doing just that.

is an expert witness in this case, not a legal advocate. His efforts to instruct the jury as to legal standards and conclusions is impermissible and must be stricken.

B. Mr. Plitt's Interpretation of the Insurance Policy Should Be Stricken.

Under Arizona law, insurance policies are interpreted as they would be understood by an average layperson who is untrained in the law, business, or insurance. *See Tri-Star Theme Builders, Inc. v. OneBeacon Ins. Co.*, 426 F.App'x 506, 509 (9th Cir. 2011); *see also Teufel v. Am. Family Mut. Ins. Co.*, 419 P.3d 546, 548 ¶ 10 (Ariz. 2018); *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1135 (Ariz. 1982). Unless the Court finds the insurance policy to be ambiguous, an expert witness's opinions regarding contract interpretation are not admissible. *See Employers Reinsurance Corp.*, 647 P.2d at 1135.

Here, Mr. Plitt offers interpretation of the insurance policy even though he admits that it is unambiguous and "for the trier of fact or the judge to decide." [Ex. 2 at 145:15–19.] For instance, on pages 26 to 27, Mr. Plitt provides analysis on the policy's Related Claims provision, which he describes as a "Deemer" provision. [Ex. 1 at 26–27.] Mr. Plitt then describes the purpose of the "Deemer" provision "is to claw back into the policy, related matters to the first reported claim that had occurred during the policy term as defined in the policy." [*Id.* at 27.] Next, Mr. Plitt explains how the "Deemer" clause works in the AIG policy. [*Id.* at 27.] Such discussion is unnecessary and risks confusing the jury. The Related Claims provision in the AIG policy is clear and speaks for itself. Thus, Mr. Plitt's decision to attach a term of art ("Deemer") to the Related Claims provision is not helpful to the fact finder. This term of art is not used anywhere in the Policy and inserting it here will confuse rather than assist any fact finder. Accordingly, such discussion must be stricken.

C. Mr. Plitt's Opinions as to the State of Mind Should Be Stricken.

Expert testimony that concerns the "state of mind" of a party is unhelpful because it is a fact question better decided by a trier of fact. *See Krys v. Aaron*, 112 F.Supp.3d 181, 203 (D. N.J. 2015). Moreover, experts that rely on their experiences to opine on what an entity with a particular experience "*should* have known, or *should* have done under various circumstances is likewise inadmissible." *Id.*

Here, despite never speaking to anyone from AIG, Mr. Plitt opined multiple times regarding AIG's state of mind as it pertained to whether AIG performed a reasonable investigation prior to denying defense and indemnity for the Prudential and Maricopa County third-party claims in the G&K litigation. [Ex. 2 at 37:5–16.] For example, on page 29, Mr. Plitt opined that an AIG "adjuster would have been aware that Prudential alleged that the 'G&K litigation [was] a continuation and extension of the RID litigation' with 'nearly identical factual and legal allegations' and 'the same damages …" [Ex. 1 at 29.] Similarly, on Page 30, Mr. Plitt opined that an AIG "adjuster looked at the two coverage pathways in the [AIG] policy as one of the simplest ways to determine if any additional 'claim relatedness' investigation would be necessary for the determination of coverage." [*Id.* at 30.] Additional instances of Mr. Plitt stepping into the shoes (and mind) of an AIG adjuster and opining on what the adjuster thought can be found on page 31 of the report. There, Mr. Plitt specifically states what an adjuster should have done and then concludes AIG did just that. [*Id.* at 31.]

Mr. Plitt even admits that he fully intends to testify regarding "state of mind" when he states that "in assessing the insurance company's conduct, questions can arise regarding the insurance company's interpretation and belief regarding the insurance company's interpretation of the governing law." [*Id.* at 27.] Mr. Plitt then goes on to state that "the question is not what the law is that governs a particular case, but what the insurance company interpreted the law to be and how that interpretation informed the insurance company's decisions and conduct regarding the claim." [*Id.*] This statement confirms his deliberate intent to testify regarding the AIG adjuster's state of mind. Such testimony is improper and should be stricken.

D. <u>The Parts of Mr. Plitt's Report that Fail to Set Forth the Facts and Data on which He Relies Should Be Stricken.</u>

Federal Rules of Civil Procedure 26 provides that expert testimony "must be accompanied by a written report—*prepared* and signed *by the witness*." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Although counsel may assist an expert in preparing the

- 9 -

1  report, counsel's assistance cannot amount to ghostwriting. *See Numatics, Inc. v. Balluff,*
2  *Inc.*, 66 F. Supp. 3d 934, 943 (E.D. Mich. 2014). For example, in *Numatics*, the expert
3  report included "nearly indistinguishable" portions of counsel's previously submitted
4  discovery and invalidity contentions. *Id.* at 945. The court determined this was improper
5  because: "The citations are identical. The prose is indistinguishable down to the
6  punctuation, leading to only one possible conclusion: the report was ghost-written by
7  [Defendant's] attorneys as a legal brief disguised (thinly) as an expert disclosure." *Id.*

8        Here, the ghostwriting takes a different form than that in *Numatics*, but it is just as
9  offensive. As mentioned above, Mr. Plitt did not draft a summary of the facts himself that
10 he relied upon in preparing his report. Instead, he copied and pasted verbatim the factual
11 sections from AIG's Motion for Summary Judgment, the Seventh Agreed-To Litigation
12 Plan, dated November 14, 2013, and the Court's Order, dated February 5, 2021.[4] [Ex. 1 at
13 13–25.] However, Mr. Plitt did not copy verbatim the factual background from Dolphin's
14 Second Amended Complaint. Instead, he states that he "eliminate[d] words or phrases [in
15 the Complaint] that go beyond factual reporting and involve evaluative terminology by the
16 Complainant author." [*Id.* at 16.] Interestingly, he did not have the same moral qualms
17 regarding AIG's Motion for Summary Judgment that he lifted. [*Id.* at 23–25.]

18       Not only was Mr. Plitt's lifting of the AIG Motion so exact that it kept AIG's exhibit
19 references, but it also kept AIG's legal arguments too. For example, Mr. Plitt directly copied
20 and pasted AIG's legal argument that "[t]he claims by RID in the August 19, 2009 letter
21 and in the RID Lawsuit for cost recovery under section 107(a) of CERCLA are "clearly
22 distinct" from Prudential's and Maricopa County's eventual claims for contribution under
23 section 113(f) of CERCLA in the G&K lawsuit." [*Id.* at 25.] So pervasive was Mr. Plitt's
24 direct copying that he even kept the case citation and parenthetical that accompanied that
25 argumentative statement (*See, e.g., Whittaker Corp. v. U.S.*, 825 F.3d 1002, 1007 (9th Cir.
26 2016) ("The Supreme Court has made clear that "cost recovery" and contribution" are "two

---

[4] Mr. Plitt also copied and pasted verbatim AIG's denial communications. [Ex. 1 at 37–50.]

'clearly distinct' remedies.") (quoting *United States v. Atl. Research Corp.*, 551 U.S. 128, 129, 127 S. Ct. 2331, 2333, 168 L. Ed. 2d 28 (2007)). [*Id.*] Mr. Plitt's insertion of such a CERCLA legal argument is curious because he admits that he never handled a CERCLA case previously. [Ex. 2 at 18:18–21.] Consequently, the only way such an argument could be incorporated into his report is if he lifted it directly from legal arguments formed by AIG's counsel.

With that said, Mr. Plitt's decision to copy and paste verbatim select pleadings and editorialize others should be stricken for two reasons: (1) it creates a report that is more confusing than helpful and (2) it confirms that sections of the report are nothing more than a thinly veiled legal brief disguised as an expert disclosure.

## IV.  CONCLUSIONS

For the foregoing reasons, Dolphin requests that the Court strike the portions of Mr. Plitt's expert report identified in this Motion, including the improper legal analysis and conclusions on pages 9-13, 26-27, 35 and 50-52, opinions as to state of mind on pages 29-31, and the legal arguments lifted from other documents found on pages 13-25. The Court should prohibit Mr. Plitt from testifying as to the same at trial.

DATED this 9th day of May 2022.

SNELL & WILMER L.L.P.

By: *s/Anthony W. Merrill*
Anthony W. Merrill
Lucas J. Narducci
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Plaintiff Dolphin, Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

*s/Elysa Hernandez*